## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

| | |
|---|---|
| **EDWARD R. VANEK, et al.,** | **CIVIL ACTION NO. 5:21-183-KKC-MAS** |
| **Plaintiffs,** | |
| **v.** | **OPINION AND ORDER** |
| **THE OHIO CASUALTY INSURANCE CO., et al.,** | |
| **Defendants.** | |

*** *** ***

In this consolidated action, plaintiffs seek payment of underinsured motorist benefits under a commercial auto policy (the Policy) issued by defendants The Ohio Casualty Insurance Company (Ohio Casualty). The matter is before the Court on multiple motions for summary judgment. The first is a motion from defendants Ohio Casualty. (DE 40). The second is a motion from plaintiff Rhonda Olenik, administrator of the estate of Donna Vanek (Vanek I). (DE 42). The third is a motion from plaintiffs Edward Vanek and Jodie Hodges, individually and as ancillary co-administrators of the estate of Brody Vanek (Vanek II). (DE 41). For the following reasons, Ohio Casualty's motion for summary judgment will be GRANTED and both plaintiffs' motions will be DENIED.

## I.

The facts in this case are virtually undisputed. Donna Vanek and her nephew Brody Vanek were driving together when they were both killed in a two-car collision. (DE 43 at 2). Donna worked for Beyond the Surface (BTS), a landscaping and paint-striping business. (DE 41, #1 at 1). At the time of the accident, Donna and Brody had just left a BTS job site and were on their way to

a Sherwin Williams store to pick up paint and supplies. *Id.* Brody was not an employee of BTS and was merely accompanying Donna on the errand. (DE 42, #1 at 1).

Donna, the driver, and Brody, the passenger, were in a 2016 Kia Optima (the Kia). (DE 43 at 2). Donna co-owned the Kia with plaintiff Edward Vanek, Brody's father. *Id.* The Kia was insured under Edward Vanek's personal policy.[1] *Id.* Ohio Casualty did not directly insure the Kia but did insure two of BTS's vehicles under a Commercial Auto Policy (the Policy)—a 2012 International TerraStar and a 2009 Ford F-250. *Id.* at 4. In addition to the obvious coverage of any covered autos, the Policy also included uninsured motorist coverage for temporary substitutes for covered autos. The pertinent policy provision stated:

> 2. If the insured is a partnership, limited liability company, corporation, or any other form of organization, then the following are "insureds" for a covered "auto" described on the policy, a replacement for a covered "auto" described on the policy, or for a newly acquired "auto":
>
>> a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

(DE 1, #2 at 51-52).  The parties do not dispute that there were only two "covered" autos under the policy—the TerraStar and the F-250—and that any UIM coverage for the Kia under the Policy would be based on the "temporary substitute" provision. Further, the parties do not dispute the status of each of the covered autos at the time of the crash. The F-250 was out of service and in a repair shop (*see* DE 40 at 7 n.22) and the TerraStar was in working order and being used at the job site from which Donna and Brody departed on their errand. (*See* DE 43 at ¶ 20; DE 41, #1 at 4). Though there is some minor dispute as to how often Donna used the Kia for work-related tasks,

---

[1] Donna Vanek's estate settled with the insurer on this personal policy. The plaintiffs have also settled with the other driver, his employer, and his employer's insurer. (DE 43 at ¶ 6-7). The only issues before the Court concern the UIM policy Ohio Casualty issued to Beyond the Surface.

the primary issue in this case is one of contract construction—whether the Kia was a "temporary substitute" under the Policy.

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must "determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001).

Nothing about this analysis changes when the Court is presented with cross-motions for summary judgment. "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). When considering competing summary judgment motions, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*

In their respective motions for summary judgment, all of the parties suggest that the language of the relevant Policy provision is clear and unambiguous. The only real dispute here is what exactly the Policy clearly and unambiguously says. Thus, this is a contract interpretation issue and can be properly decided at the summary judgment phase. *Kentucky Ass'n of Ctys. Workers' Comp. Fund v. Cont'l Cas. Co.*, 157 F. Supp. 3d 678, 681 (E.D. Ky. 2016) ("In Kentucky, the interpretation of insurance contracts is a matter of law for the Court to decide, and is appropriately determined through summary judgment when there are no other factual issues in dispute.").

Under Kentucky law, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a part of the policy." Ky. Rev. Stat. § 304.14-360. Courts should interpret the insurance contract "without disregarding or inserting words or clauses, and seeming contradictions should be harmonized if reasonably possible." *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875–76 (Ky. 2002) (internal quotations removed). Though Kentucky courts favor construing insurance contracts liberally and resolving doubts for the insured, *Dowell v. Safe Auto Ins. Co.,* 208 S.W.3d 872, 878 (Ky. 2006), this "certainly does not mean that every doubt must be resolved against [the insurer] and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with . . . the plain meaning and/or language of the contract." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008) (quoting *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 226 (Ky.1994)). In short, "the proper interpretation of an insurance contract depends on the plain meaning of its language in light of any applicable

precedent." *W. Am. Ins. Co. v. Prewitt*, 401 F. Supp. 2d 781, 785 (E.D. Ky. 2005), aff'd, 208 F.

App'x 393 (6th Cir. 2006).

## III.

The Court will first consider Ohio Casualty's motion for summary judgment and begin

with the contractual language. The pertinent provision is a fairly standard clause outlining who can

be covered under the Policy's UIM insurance:

> Anyone "occupying" a covered "auto" or a temporary substitute for a covered
> "auto". The covered "auto" must be out of service because of its breakdown,
> repair, servicing, "loss" or destruction.

The parties disagree as to the meaning on two fronts: (1) what is meant by the "out of

service" clause and (2) what is meant by "temporary."

Ohio Casualty argues that the plain, unambiguous meaning of the "out of service" clause

is that the use of the non-covered auto must be *necessary* due to the breakdown, repair, servicing,

loss, or destruction of covered vehicles—*all* covered vehicles. Both plaintiffs tender essentially

the same argument: the Policy only requires that *a* covered auto be out of service due to breakdown,

repair, servicing, loss, or destruction—not *all* covered autos. (*See* DE 45 at 5; DE 42, #1 at 10).

Thus, the temporary substitute provision is triggered as long as one covered auto was out of service

due to breakdown, repair, servicing, loss, or destruction—the status of the other covered auto

notwithstanding.

This dispute is easily resolved. The Kentucky Court of Appeals clearly held that this clause

means all covered autos must be out of service before the temporary substitute coverage kicks in.

In *Est. of Turner v. Globe Indem. Co.*, the court held the following:

> [F]or [the plaintiff] to prevail, she needed to provide some evidence to show: (1) *that no
> company vehicle was available for her husband because of breakdown, repair, servicing,
> loss or destruction*, and (2) that Turner was driving his personal vehicle because of this
> unavailability. . . . [W]e believe the trial court correctly concluded that there were

> serviceable fleet vehicles available to [the decedent], and that he chose to drive his own vehicle for his own convenience.

223 S.W.3d 840, 842 (Ky. Ct. App. 2007) (emphasis added). In *Turner*, the insurance clause at issue was virtually identical to the clause now before the Court. *See id.*

Vanek I argues that the *Turner* decision is erroneous—specifically that it is only two pages long, lacks solid citation to legal authority, is inconsistent with itself, and is unconscionable. (DE 46 at 6-8). These arguments are meritless. Even if the Court agreed with these assertions, it is not the province of the federal district court to disregard clearly stated case law from the courts whose law governs the dispute. The Court "must follow the decisions of the highest court of Kentucky and may consider the appellate court's decisions as persuasive." *Kentucky Ass'n of Ctys. Workers' Comp. Fund v. Cont'l Cas. Co.*, 157 F. Supp. 3d 678, 681 (E.D. Ky. 2016) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). Though *Turner* is not a decision of the highest court in Kentucky, it is a decision from Kentucky's appellate court based on similar facts to the case at bar and is therefore extremely persuasive. Further, "where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989). The Kentucky Supreme Court declined to review the *Turner* decision and plaintiffs provide nothing to suggest that court would decide otherwise.

Vanek II presents additional arguments to sidestep *Turner*. She argues that the present case is more like *Am. Premier Ins. Co. v. Davenport*. Not so. In *Davenport*, the Kentucky Court of Appeals did find that an uncovered auto was a "temporary substitute" under an insurance policy that covered two autos. No. 2004-CA-001167-MR, 2005 WL 1252316, at *2 (Ky. Ct. App. May

27, 2005). But the policy in *Davenport* was a personal—not a commercial—policy and the "temporary substitute" clause there was less similar to the clause *sub judice* than the clause in *Turner*. Moreover, the *Davenport* court specifically noted in its holding that testimony revealed "[plaintiff's] two [covered] vehicles were not in working condition and that one of the two was repaired a few days following the accident." *Id.* Though this is not an unequivocal statement that similar UIM policies require all covered vehicles to be out of service, it in no way contradicts the clear holding in *Turner*.

Plainly put, there is no indication that the Kentucky Supreme Court would hold differently and the Kentucky Court of Appeals's decision in *Turner* controls. Accordingly, to survive summary judgment, plaintiffs must provide some evidence to show: (1) that no company vehicle was available to Donna because of breakdown, repair, servicing, loss, or destruction, and (2) that Donna was driving her personal vehicle because of this unavailability. The undisputed facts do not support this. Here, as in *Turner*, there were serviceable fleet vehicles available to the decedent, and they chose to drive their own vehicle out of convenience. *See Turner*, 223 S.W.3d at 843. It is undisputed that the TerraStar was serviceable at the time the decedents chose to use the Kia for company business. Though the TerraStar was being used by other BTS employees, the TerraStar was in working condition and sitting on the very job site from which Donna and Brody departed. (*See* DEs 40 at 7-8, 45 at 2-3, 46 at 3). It may have been attached to a trailer with a painting machine and it may have been in use for other company business, but it was not unavailable to Donna because of breakdown, repair, servicing, loss, or destruction. The argument (*see* DE 45 at 12) that the covered auto Donna *would have* used—the F-250—was unavailable under the policy language is irrelevant. Kentucky law is clear that this sort of insurance provision requires that *no*

covered auto be available. The other covered auto—the TerraStar—was in working condition and thus available.

Vanek I further disputes that the Policy requires the covered auto to be unavailable *because of breakdown, repair, servicing, loss or destruction*, and cites *United Fin. Cas. Co. v. Warner* for support. There, the district court rejected a claim for coverage under a similar policy and stated "[t]here is no evidence that any of the other insured company vehicles were unavailable for [plaintiff's] use on the day of the accident." No. 3:18CV-00293-JHM, 2019 WL 1376747, at *3 (W.D. Ky. Jan. 22, 2019). Vanek argues the *Warner* court "did not require that other insured company vehicles be unavailable due to breakdown, repair, servicing, loss or destruction . . . only unavailability was discussed." (DE 46 at 8-9). It is clear, however, that the court merely omitted the "due to breakdown, repair, servicing, loss or destruction" language as a form of shorthand. The court cited the policy provision in full a paragraph earlier. The policy there, like the Policy here, clearly and unambiguously stated that the covered auto must be unavailable for those specific reasons. The plain meaning of the Policy does not allow for temporary auto coverage if the covered auto is "unavailable" simply because someone else is using it at the time. Accordingly, the Court finds that Donna and Brody were not using the Kia because of the unavailability of all covered autos, as defined by the Policy. Because this finding is dispositive of whether the UIM Policy provision at issue covers Donna and Brody, the Court will not consider arguments nor interpret the meaning of "temporary" in the Policy provision.

IV.

The Court will now consider plaintiffs' motions. Their arguments in favor of summary judgment mirror their arguments in opposition to Ohio Casualty's motion for summary judgment. Vanek I argues that the Policy only requires that one of the covered autos be unavailable due to

breakdown, servicing, etc. Alternatively, Vanek I argues that both covered autos were in fact unavailable to Donna at the time. Vanek II presents similar arguments. Both plaintiffs ask the Court to adopt the reasoning of out-of-state courts in cases they claim are more analogous to the case at bar.

Again, there are no genuine issues of material fact here. It is undisputed that a covered auto under the Policy—the TerraStar—was in working condition and available to Donna at the time she chose to drive her personal vehicle. It was not unavailable because of breakdown, repair, servicing, loss, or destruction. Kentucky law clearly requires that there be *no* covered auto available. The Court declines to adopt non-binding caselaw when there is clear Kentucky law on point. Any factual disputes that may exist here—mainly what covered auto Donna would have used to pick up paint and how often she may have used her personal vehicle for company business—are immaterial.[2] Under the plain meaning of the Policy, viewed in light of applicable precedent, the Kia was not a covered auto. Ohio Casualty is entitled to judgment as a matter of law.

Accordingly, the Court hereby ORDERS that the defendant Ohio Casualty's motion (DE 40) is GRANTED. Plaintiff Rhonda Olenik's motion (DE 42) and plaintiffs Edward Vanek and Jodie Hodges's motion (DE 41) are both DENIED.

This 30th day of November, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

---

[2] As with the discussion of Ohio Casualty's motion, the Court need not delve into the dispute over the term "temporary" because the other issue of interpretation is dispositive and no issues of material fact exist as to that issue.